**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **640ENERGY, INC and INTERCEPT ENERGY SERVICES, INC** **Plaintiffs,** | § § § § | |
| **v.** | § | **CASE No.:** 1:17-CV-010 |
| **ENERGY MANUFACTURING, LLC; ENERGY HEATING, LLC; and INTELLIGENT ENERGY, LLC** **Defendants.** | § § § § § | |

**PLAINTIFFS' ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES **640ENERGY, INC.** and **INTERCEPT ENERGY SERVICES, INC,** Plaintiffs, in the above numbered and styled cause and file this their Original Complaint against **ENERGY MANUFACTURING, LLC; ENERGY HEATING, LLC** and **INTELLIGENT ENERGY, LLC,** Defendants, and in support of which would respectfully show the Court as follows:

**PARTIES**

1. Plaintiff, **640ENERGY, INC.**, is a Colorado corporation and wholly-owned subsidiary of Intercept Energy Services, Inc. authorized to transact business in North Dakota, with its principal place of business at 1400 16th Street, Suite 400, Denver, Colorado 80202.

2. Plaintiff, **INTERCEPT ENERGY SERVICES, INC.**, is a Canadian corporation that owns 640Energy, Inc., with its principal place of business at 11464 – 149 Street, Edmonton, Alberta T5M 1W7.

3. Defendant, **ENERGY MANUFACTURING, LLC**, is an Idaho limited liability company with its principal place of business located at 227 West 10 South Knox Drive, Burley, Idaho 83318, and may be served by serving its registered agent, Noland Critchfield, at 500 N. College Street, Oakley, Idaho 83346, or wherever he may be found.

4. Defendant, **ENERGY HEATING, LLC**, is an Idaho limited liability company with its principal place of business located at 500 North College Street, Oakley, Idaho 83345, and may be served by serving its registered agent, Noland Critchfield, at 500 N. College Street, Oakley, Idaho 83346, or wherever he may be found.

5. Defendant, **INTELLIGENT ENERGY, LLC**, is an Idaho limited liability company with its principal place of business located at P.O. Box 608, Burley, Idaho 83318, and may be served by serving its registered agent, Noland Critchfield, at 500 N. College Street, Oakley, Idaho 83346, or wherever he may be found.

## VENUE AND JURISDICTION

6. **Subject Matter Jurisdiction.** Diversity jurisdiction exists under 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of foreign states and different states.

7. **Venue.** The Western Division of the United States District Court for the State of North Dakota is the proper court as the causes of action arose in and around Williams County, North Dakota.

## FACTUAL BACKGROUND

8. Plaintiff, 640energy, Inc. (hereinafter "640"), is an oil field services company that operates in the United States and Canada.

9. Plaintiff, Intercept Energy Services, Inc. (hereinafter "Intercept"), wholly owns 640.

10. Defendant, Energy Manufacturing, LLC (hereinafter "EM"), produces truck-mounted, trailer-mounted, skid-mounted and semi-permanent water heating units utilizing direct-contact water heating methods.

11. Defendant, Energy Heating, LLC (hereinafter "EH"), produces and licenses water heating technology.

12. Defendant, Intelligent Energy, LLC (hereinafter "IE"), produces and licenses water heating technology.

13. On or about February 23, 2012, 1503826 Alberta Ltd. (hereinafter "Alberta"), predecessor to Intercept, executed a Memorandum of Understanding (hereinafter "2012 Memo") with Energy Heating LLC and Energy Heating Canada Inc, predecessors to IE and EM, respectively. Alberta entered into this agreement due to numerous representations made by Energy Heating. One of these representations being that their water heating units were so exceptional that they commanded in excess of $1000 per hour rates when used in the oil and gas hydraulic fracturing process. Ultimately, they further represented that four units, which Energy Heating was to affix to trucks provided by Alberta, would be timely delivered and timely repaired. The agreement also contained clauses granting Intercept exclusive distribution of the water heating units/technology in defined areas, payment terms for the purchase of the trucks,

warranties and representations, and royalty payments that Intercept was to pay based on the gross revenues of the trucks. Within a few months of entering into the agreement, it became apparent that the representations Defendants made regarding the trucks were false, specifically the hourly rates for the trucks was severely inflated and a more accurate estimate in the hydraulic fracturing process was $300 to below $100 an hour. Defendants acknowledged the discrepancies and agreed to start over and negotiate a new agreement. Numerous emails between the parties demonstrate the discrepancies and that the agreement was entered into based on erroneous facts and misrepresentations. It is clear that there was never a meeting of the minds between the parties. The emails confirm both parties' desire and understanding that the agreement was being re-negotiated. As a result, the parties began attempting to negotiate a new agreement.

14. Over the next approximately two years and ten months, Defendants attempted to induce Plaintiffs to agree to more and more onerous terms and began to bill Plaintiffs as if they had agreed to the new terms. During the same time period, Plaintiffs experienced numerous problems with the trucks and Defendants failed to timely repair the heating trucks they provided Plaintiffs. The trucks broke down severely and broke down often, resulting in tens of thousands of dollars in repairs paid by Plaintiffs, loss of numerous business opportunities for Plaintiffs, and the dissolution of key business relationships for Plaintiffs. Defendants were aware of many of the issues Plaintiffs have experienced with their trucks based on the issues being previously reported with other trucks and failed to warn Plaintiffs in advance of the issues. Defendants also failed to deliver the promised fourth heating truck even though they represented to Plaintiffs on numerous occasions that it was built and ready to go. Despite the fourth truck not being built,

Defendants did syphon payments Plaintiffs made toward the second and third trucks and billed them instead toward the fourth truck.

15. When Plaintiffs began to voice displeasure with Defendants' failures, Defendants began directly interfering with Plaintiffs' business relationships. Defendants represented to at least one vendor that Plaintiffs were disreputable and were in essence thieving from Defendants, which in return caused the vendor to cease supplying fuel to Plaintiffs. In another event, Defendant began actively poaching one of Plaintiffs' best customers from them. Defendants have used Plaintiffs' confidential and proprietary information that they were privy to through their business relationship with Plaintiffs to directly compete with Plaintiffs. Defendants have intentionally delayed in repairing Plaintiffs' trucks, so that they could gain momentum in the market while Plaintiffs' truck were out of service. Despite knowing that Plaintiffs have at least two trucks non-operational in the height of the heating season during an upswing in the market, Defendants have continued to escalate their tactics by delaying service, delaying repairs and using continual stall tactics to harm Plaintiffs' business. By continually moving the goal post and proposing new and more onerous terms on the sale and repair of the trucks, Defendants are attempting to squeeze Plaintiffs out of the market. Repairs that could be made in the field are not made in the field and Defendants have even attempted to convince Plaintiffs to return the trucks to Idaho for inspection and repair. Adding insult to injury, this conduct by Defendants continues in spite of the fact Plaintiffs have spent in excess of $12 million dollars, approximately $8 million of which went directly to Defendants, towards the building and operation of the trucks used in their business. Meanwhile, Defendants continue to grow their business at the expense of Plaintiffs and harm Plaintiffs' brand in the marketplace.

**TEMPORARY RESTRAINING ORDER/PRELIMINARY INJUNCTION**
**Rule 65, Fed. R. Civ. P.**

16. Plaintiffs re-allege and incorporate the facts and allegations set forth as if included herein.

17. Pursuant to Fed. R. Civ. P. 65, Plaintiffs seek a Temporary Restraining Order from this Court that restrains Defendants from continuing with the tortious conduct described in this Complaint. Given the nature of Defendants' actions and the extent of and potential for further damage to Plaintiffs' business relationships, it is essential that this Court act immediately. If the Court does not enter an order restraining Defendants, then they will continue to improperly interfere with Plaintiffs' business relationships in violation of North Dakota law. Such acts will irreparably injure Plaintiffs because Plaintiffs will suffer further loss of business opportunities and damage to its business reputation. Because of the uncertain nature of these damages, Plaintiffs have no adequate remedy at law.

18. Accordingly, Plaintiffs seek a Temporary Restraining Order that:

a. Enjoins Defendants from contacting Plaintiffs' vendors.

b. Enjoins Defendants from contacting Plaintiffs' customers.

c. Enjoins Defendants from using information provided in the course of Defendants' and Plaintiffs' relationship to compete against Plaintiffs.

19. Although Plaintiffs do not believe a bond is necessary or required, Plaintiffs are willing to post a reasonable bond to secure the temporary injunctive relief requested in this Complaint.

20. Plaintiffs ask the Court to set this matter for hearing and, after the hearing, to issue a Temporary Injunction or Preliminary Injunction against Defendants, enjoining the same conduct as identified above. Such relief shall restrain Defendants from the commission and continuance of these acts, the commission and continuance of which would produce injury to Plaintiffs.

21. Regardless of whether this Court grants Plaintiffs a temporary restraining order or a preliminary injunction as requested herein, this Court should issue, as part of any final judgment in this action, a permanent injunction enjoining and restraining Defendants, and any other related entity or person that any of the Defendants own, operate, fund, control or has an interest in, from the action described above.

## UNLAWFUL INTERFERENCE WITH BUSINESS

22. Plaintiffs re-allege and incorporate the facts and allegations set forth as if included herein.

23. Defendants were aware that Plaintiffs had business relationships dependent upon the receipt of four heating trucks in working order. Defendants never tendered all four heating trucks, and the units provided constantly broke down. Defendants affixed their heating units to the trucks knowing that the trucks were not compatible with the heating units. Regardless of the knowledge that failing to provide the necessary quantity and quality of heating trucks to Plaintiffs would cause Plaintiffs severe damage to their present and future business relationships, Defendants never provided the required number of heating trucks, nor heating trucks that worked properly for the purpose for which they were bought.

24. Further, Defendants were aware that disparaging comments regarding Plaintiffs made to Plaintiffs' vendors and customers had a high likelihood of severely impacting Plaintiffs' business. Nonetheless, Defendants contacted at least one vendor that supplied Plaintiffs with much needed supplies, and Defendants maliciously disparaged Plaintiffs' professional reputation to that a fuel vendor. As a result, the vendor refused to continue supplying fuel to Plaintiffs. Defendants also contacted one of Plaintiffs' best customers and induced them to stop using Plaintiffs' heating services, even while Plaintiffs were paying for heating trucks provided by Defendants. Therefore, by disparaging Plaintiffs' professional reputations to vendors and customers alike, Defendants have interfered with Plaintiffs' ability to operate their water-heating services. These actions by Defendants prevented Plaintiffs from bringing in business and from fulfilling their obligations under various third-party contracts.

**DECEIT**
**Section 9-10-03, N.D.C.C.**

25. Plaintiffs re-allege and incorporate the facts and allegations set forth as if included herein.

26. Defendants made certain representations regarding the quality and quantity of the heating trucks as well as the revenue they would generate for Plaintiffs. Additionally, Defendants represented to Plaintiffs that the heating units would work with the trucks they were affixed to, that they would be timely repaired in the event of a malfunction or break-down, and that all units would be provided in a timely manner. However, despite the representations, the per hour market rate earned by each truck was one-fifth to one-quarter of what Defendants represented, the trucks were unable to handle the demands of the heating units, the units were not

repaired in a timely manner by Defendants on the numerous occasions that they malfunctioned, and all units were not provided to Plaintiffs.

27. Plaintiffs relied on Defendants' representations that the per hour market rate for the heating trucks was vastly greater than what the trucks could generate in the oil and gas services market.

28. Plaintiffs relied on Defendants' representations that they would deliver the required quantity of heating trucks.

29. Plaintiffs relied on Defendants' representations that the units would work properly with the trucks they were affixed to.

30. Plaintiffs relied on Defendants' representations that necessary repairs would be accomplished in a timely manner.

31. Defendants suggested and represented facts to Plaintiffs which they knew were not true or which they should have reasonably known were untrue.

32. Defendants additionally suppressed facts that they knew they were required to disclose to Plaintiffs.

33. The facts and representations that Defendants conveyed to Plaintiffs were likely to mislead Plaintiffs.

34. Defendants made the representations and communicated to Plaintiffs in order to induce Plaintiff to enter into an agreement that Defendants would timely provide the required number of heating trucks and would repair those trucks in a timely manner without any intention of performing as represented.

35. As a direct and proximate result of Defendants' deceit, Plaintiffs have suffered direct economic damages in an amount not less than $500,000.00.

**NEGLIGENT MISREPRESENTATION**
**Section 9-03-08(2), N.D.C.C.**

36. Plaintiffs re-allege and incorporate the facts and allegations set forth as if included herein.

37. Defendants made certain false representations or omissions regarding the quality, quantity, and marketability of the heating trucks it provided Plaintiffs.

38. However, Defendants were continually apprised of the issues Plaintiffs were having with the heating trucks and the need for all trucks to be delivered on time. They failed and continue to fail to provide the number of heating trucks required and the services promised in support of those trucks.

39. The false representations or omissions made by Defendants to Plaintiffs were material.

40. The false representations or omissions made by Defendants to Plaintiffs were untrue and/or misleading.

41. Defendants negligently made the representations or omitted to disclose material facts to Plaintiffs.

42. Plaintiffs were unaware of the falsity or misleading nature of Defendants' representations or omissions.

43. Plaintiffs relied upon the truth of Defendants' representations or omissions and was justified in relying on the same.

44. As a direct and proximate result of their reliance on Defendants' representations or omission, Plaintiffs have suffered direct economic damages in an amount of not less than $500,000.00.

**NEGLIGENCE**

45. Plaintiffs re-allege and incorporate the facts and allegations set forth as if included herein.

46. Defendants had a duty to provide Plaintiffs heating trucks that worked as Defendants represented.

47. Defendants breached their duties by failing use the correct vehicles with the heating units and/or failing to apprise Plaintiffs of the correct vehicles to be used with the heating units, as well as failing to adequately service the vehicles when they malfunctioned or broke down. Furthermore, their failure to deliver adequate heating trucks, deliver them in the correct number, and repair them in a timely manner cost Plaintiffs present and future business opportunities and relationships.

48. As a direct and proximate result of Defendants' breach of duty, Plaintiffs were unable to complete jobs, bring in new business, and lost current customers.

49. Plaintiffs sustained economic damages because of Defendants' breach of duty in an amount to be determined by the trier of fact.

**ACTUAL FRAUD**
**Section 9-03-08, N.D.C.C.**

50. Plaintiffs re-allege and incorporate the facts and allegations set forth as if included herein.

51. The 2012 Memo is not a valid contract between Plaintiffs and Defendants because Defendants committed actual fraud on Plaintiffs in order to execute the agreement.

52. Defendants represented to Plaintiffs that the required number of heating trucks would be provided to Plaintiffs, that the heating units were appropriate for the trucks to which they were affixed, that the heating trucks would be repaired by Defendants in a timely manner, and that the trucks would generate a particular per hour revenue for Plaintiffs.

53. Defendants knew that they would not provide Plaintiffs with the required number of heating trucks, knew that the trucks to which the heating units were affixed were not appropriate for such use, knew that Defendants could not or would not repair the trucks in a timely manner, and knew that trucks could not generate remotely near the per hour revenue that Defendants represented to Plaintiffs.

54. Even if Defendants believed that the trucks they affixed the heating units to were appropriate, and/or that the per hour rate of revenue that they represented to Plaintiffs was accurate, the information possessed by Defendants did not warrant these representations.

55. Defendants suppressed the facts that they would not provide Plaintiffs with the required number of heating trucks, knew that the trucks to which the heating units were affixed were not appropriate for such use, knew that Defendants could not or would not repair the trucks in a timely manner, and knew that the heating trucks could not generate remotely near the per hour revenue that Defendants represented to Plaintiffs.

56. Defendants never intended to provide Plaintiffs the required quantity or quality of heating trucks it knew the Plaintiffs required.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendants be cited to appear and answer herein and that, upon final trial, Plaintiffs have and recover from Defendants:

(1) Judgment against Defendants;

(5) An award of all costs of suit;

(6) An award of reasonable attorney's fees;

(7) Pre-judgment interest and post-judgment interest as allowed by law; and

(8) All other and further relief

Respectfully submitted,

/s/ Michael L. Forman
Michael L. Forman, ND Bar No. 06773
E: mforman@brownpruitt.com
Brown Pruitt Wambsganss Ferrill & Dean, P.C.
600 N. Carroll Avenue, Ste. 100
Southlake, Texas 76092
Tel: (817) 203-2000; Fax: (817) 796-2799

**ATTORNEY FOR PLAINTIFFS**